Good morning, Counsel. Justice Hoffman is not present today, but he will be taking part in the resolution of this matter. He has read the briefs and the record and will participate in the resolution of this case. I made that announcement earlier, but I'm not sure if everyone was here since this is the second case. Okay. When your case is called, please step up. Actually, when Appalachian first and then Appalachian next. State your name, who you represent, and this is a microphone. It's not a recording device, not a microphone, so please modulate your voice accordingly. Remember that we've read the record, we've read your briefs, and so get to your strongest argument first. Each side will have 15 minutes, and as you can tell, we're not strict clock watchers, but if you go on too long, I will ask you to wrap it up. Okay. Counsel? May I please the Court? My name is Mark Christensen. Good morning. I represent Walsh Construction Company of Illinois and Walsh Group. Counsel? And, Your Honors, I'm here with my colleague and my partner, Mr. Nathan Hall. Good morning, Mr. Christensen. Whenever you're ready. This is a case of a good faith finding of $20,000 where the settling defendant was registered to have 2.33 blood alcohol content. She hit a properly placed jersey barrier at a construction site next to a government building, and then her car crossed the double yellow line, hit Marcos's Miranda's vehicle, and the minor suffered severe injuries. The issue before us today is did the trial court abuse his discretion in refusing to conduct an analysis of the relative culpabilities of the parties, and in the face of uncontradicted evidence, find that the $20,000 settlement by a convicted felon for drunk driving was in good faith. We think the decision of the court was unreasonable. We thought it was arbitrary, given the unrebutted evidence, and we're here to have that finding reversed. This is an interlocutory appeal. That is correct. Has the case basically been frozen waiting for this to resolve itself, or is Walsh trying to get out of the case on some kind of theory that the barrier was, in fact, properly placed? Because that would for you, wouldn't it? It would. The discovery has continued in the case. The fact discovery is not yet closed. But presumably, ultimately, Walsh would file a motion for summary judgment on that issue. But that has not happened yet? That has not happened yet. Okay. Thank you. Good faith findings are fact-driven. The burden of proof by a preponderance of the evidence is on us as the defendants. The facts that we submitted were substantial and overwhelming, notwithstanding the discovery was stayed. What did we submit? We submitted the deposition of Keisha Geans, who admitted that she had been drinking that night, did not recall anything from the time she left the place where she was drinking until she woke up handcuffed to her bed. We submitted the affidavits of two police officers that investigated, that the accident occurred, and established the blood alcohol content. We submitted the affidavit of Walsh Construction Project Manager Brian Covert, who stated that the Jersey barrier was properly placed, it was permitted, and we submitted the permit as a business record with that affidavit that was authenticated. We submitted the certified copy of the conviction of the felony for conviction to which Keisha Geans pleaded guilty. And we submitted the sworn interrogatory answers of Michael Miranda, or Marcus Miranda, establishing his traumatic brain injuries. And despite that recital of all that evidence, there's an issue floating around here, isn't there, that the judge might not have allowed additional discovery on that before making the good faith finding? That is correct. And for me, that's a two-step process, Your Honor. What's missing? Well, what would be missing is this. We were not allowed to conduct any evidence with respect to whether there was collusion or not, because this was a pre-suit settlement. So how was the demand made between the plaintiff and Keisha Geans' attorney? Was there essentially an agreement that, you know, we'll take the 20,000 policy limit, because that's all you can provide, and we're just going to go ahead and go after cash. So there was, so additional discovery with respect to collusion. Counsel, that's what you think really happened here, isn't it? What? But that's what happened. What you just said. Yeah, well, that is what I think happened. But in light of that, what would be the incentive for the collusion? I mean, we'll make the assumption it's a subpar kind of carrier. They've got an insurer who obviously was in a big accident. It was all her fault, so they just throw the money on the table and run away. And then they don't have to pay defense costs. That's true, and actually I thought that Keisha Geans' attorney did a great job in the release, because he was able to get indemnity from the plaintiff for any ongoing liability or causes of action that may potentially in the future have been brought against Keisha Geans. Frequently settlements are contingent upon a good faith finding, and there's no indemnity of the plaintiff against its judgments on the remaining defendants, but here there was. So I think the release indicates, and the indemnity agreement indicates, that they were not sure they were going to get good faith. And Keisha Geans' attorney did a very good job in protecting her from an uninsured exposure by getting that indemnity. But that goes to Keisha Geans' rights. Walsh on the other hand. So if in fact Judge Gomelinsky had not granted the good faith finding, she still would have been completely released? That is correct. She would have stayed on the verdict for her. If we went to trial and there was a judgment, hypothetically of a million dollars, and Walsh was found only 20% liable, the plaintiff would indemnify Keisha Geans for the remaining 80%. And the trial would proceed on, she'd be present at the trial by virtue of your contribution claims? That is correct. Which is extinguished because of the good faith finding. That is correct. Which puts Walsh then in a place of having essentially the sole proximate cause. You know, this is, in some respects, this is a case about numbers. And I'm not sure anybody clearly told us what the special damages were. We know that the injuries were severe, they, you know, there's lifetime of care, but is this, you know, what are the specials? We were limited in our discovery. We were not able to submit that into the facts. Now I'll ask the other side to ask, and I'll answer it as well. So all I have is the answers to discovery on that, in terms of Marcos' injuries, which he was in the hospital for 11 days, he had a head trauma, he had loss of consciousness, he was on a ventilator, he had difficulty swallowing, he had a hemorrhage in the brain and needed speech therapy. They're claiming a traumatic brain injury, which will result in an inability to have independent living. He had a dropped left eyebrow and he had visual defects. You know, from my experience, we're looking at hundreds of thousands of medical bills and a life care plan that's going to be in the millions. But the irony was, is that while we have the burden of proof as the defendant to show by the preponderance of the evidence that the settlement's not in good faith, our hands are tied behind our backs if we're not allowed to conduct that discovery. My argument, before Your Honor's today, is that of the secondary. I think the factual record we provided that was uncontradicted established that, according to the relative culpabilities of the parties, there could not have been a finding of good faith in this case, and this Court can reverse simply on the facts before it. If the Court is uncomfortable that it doesn't have enough facts, then the second aspect of the remand would be to vacate the good finding, allow further discovery, and then to allow the trial court to actually do a relative culpability of parties analysis, looking at the numbers. You infer, although you did not say in your argument, is it fair to say that sometimes in the absence of fraud or collusion, trial courts simply rubber stamp a settlement as being made in good faith? You inferred that in your argument. You didn't say that, but it was, I would say, strongly inferred. I think that if the courts don't look at that second public policy under the good faith statute, that that, in effect, is what happens, and that's what I felt was happening here. You know, there's no evidence of fraud or collusion, therefore the burden shifts to you, and we're not allowed to look at proportionality. And the second part of your argument is, you don't know whether there's collusion because you weren't allowed to delve into that, so maybe the rubber stamping practice of the trial court in this case is a little bit out of kilter because there could have been collusion, you just don't know. Is that what you're saying? I did not know. I still don't. Mr. Christensen, because the settlement involved a minor, this went, theoretically it was approved not only by Judge Gombolinski as good faith, but it went to a judge in probate as well, is that correct? That's correct. All right, what's the role of the judge in probate in approving the $20,000 for the minor's estate? How does that fit into the whole picture here? I think the probate proceeding is independent from this. Obviously, it's not on appeal before us, but they're saying that the probate judge gave some kind of infirmature to the amount as well, theoretically upon some kind of the accident and the nature of the accident and the nature of the injuries. I would not say that that was the issue before the probate court. I think the issue before the probate court was, you know, are we going to approve this settlement and put these funds in trust for this minor given the potential assets that are available? And that was simply a risk analysis based upon assets, not based upon relative fault of the parties. And clearly Walsh was not a party to that. So I don't think that that has any impact from a collateral stop or inference with respect to what happens in the probate court. So, you know, in reviewing all these cases, every case cited in our brief, I have four or five, where the settlement value, low settlement value is upheld or reversed, there are two consistent features to those cases. First, there is an analysis between how much is being paid versus the relative liability of the defendant. And there's a willingness to uphold low settlements where the tort fee is not the primary cause and has defenses. So in the Johnson v. Supreme Court case, the airport gets out of the city of Quincy because they had tort immunity and they weren't the primary cause of two airplanes crashing. And there's a recent case that came out of the First District, the Pelosi case. And in that case, there's a dispute over whether a settlement by a driver of a jeep where the passenger was involved was too low. And the court upheld that because the driver of the jeep was not a fault in the accident. The driver was rear-ended. And then in cases where the settlement is too low but liability is high, which, for example, is in the Bowers case where you had special work act defendants that got out for essentially $10,000, or the Worsley case, the question is, no, no, no, we're not going to allow this, where you're the primary active tort fee user and you're going to get out of the, we're not going to let you out of the case because we've done a relative culpability of the parties analysis. I'll save a few minutes for rebuttal. Rebuttal, Your Honor, but the gist of the argument is before you. And we think that the court did not do a proper analysis under the totality of the circumstances, given the facts of this case. Thank you. Good morning, Your Honors. May it please the Court, my name is Justin Treasurer. I'm here on behalf of the third party defendant, Apelli Keshagin, in this particular matter. It's our position that the issue here is really whether or not the trial court, in an absence of any real evidence of collusion, any evidence of fraud, any evidence of wrongful conduct, abused its discretion by making a good faith finding that a settlement for the entire limits of my client's insurance policy, which through discovery was determined were the entire saleable assets of what my client had at that time, was the, that settlement was in bad faith somehow, where that policy is that settling defendant's only assets. Mr. Treasurer, is the relative culpability of the tort fees is one of the factors that a court ought to consider in a good faith finding? It is considered part of the totality of circumstances analysis. So how, can you speak to that in relation to your opponent's argument that what Keshagin's was the sole cause of this accident? Well, yes. And in particular, I think that the relative, as it's not just relative culpability, it is the relationship of relative culpability to the consideration given in the case. And if you look at the... Yeah, that's a good point. So speak to that. The relative culpability in a case where this woman was the sole cause of what looks like a very horrific, horrific accident. Well, and again... And a policy of $20,000, which is relatively small. So all of those factors together speak to how that affects or impacts the judge's decision regarding a good faith finding. Certainly. And I'd like to start by pointing out that it's not established that my client was the sole cause of this accident. That's what they say. But in fact, if that was the case, then why wouldn't they have just filed a motion for summary judgment, which they still have an opportunity to do to get out of this case? Says that they're going to. And they have an opportunity to do that, and that is, in fact, a remedy that's in front of them. If they have no culpability in this particular matter, they have that as an alternative. They have the opportunity to go in front of a jury and obtain a verdict. Mr. Treasure, lawyers are creative people. That's why we're all here. So even when there is very little, somehow lawyers manage to find something, that tiny little thing. So I think nothing is absolute. And although your opponents certainly say that Ms. Eames was the sole cause of the accident, then there is certainly some support for that in the record. Again, I would like you to tie those facts together with the question that I just asked. Sure. The question of the consideration versus the relative culpability is this. In this particular case, there was discovery done. Plaintiffs had written discovery of my client. They had an opportunity to take my client's deposition as to her assets and the things of that nature. And it was determined during that discovery. Does the fact that she's judgment-proof factor into this at all? Well, certainly not. And how can it if we need to talk about the relative culpability in order to ensure a fair trial for Walsh if that claim ever went to trial? Well, the plaintiff has to be able to... I'm sorry to interrupt you, but people have multi-million dollar verdicts rendered against them all the time even though they're penalists. But that's what the verdict has to be because the evidence was found to support. Correct. And a lot of your argument centers around this $20,000 policy. We gave the whole policy. We didn't give half the policy or 75. We gave the whole policy. Well, so what? That's my question. In this case, the question isn't whether or not the relative... It's not relative culpability on its own. It is essentially what... And I pointed to some language here in the Stickler v. American Augers case where they say, if after considering all the circumstances, the court finds the plaintiff gave the settling defendant a release supported by some nominal consideration without regard to settling defendant's liability or the relationship between the consideration and the relative culpability, that settlement conflicts with the policy of the Contribution Act. In this particular case... And that language really supports your opponent, doesn't it? No, I think it actually supports us because in this particular case, there was an analysis and if you review the record from the trial court, he talks about the fact that the consideration in this particular case, the $20,000 policy, is in fact all that there... If my client is found 100% at trial, that's the most they're ever going to recover. That was Justice DeLort's point a few minutes ago. Can that be the factor on which the court hangs its good faith finding? The answer to that question is yes. And I would point the court to language in the Johnson case, which I think is the case that we talked about the most. I think both parties have talked about the most throughout the course of this. And at 823 in that particular case, the court holds that the amount of settlement has to be viewed in relation to the probability of recovery. Yeah, but in the Johnson case, you've got to... It's a little bit of apples and oranges because the city of Quincy is the one involved and it's got tort immunity. No one in this case has got tort immunity, do they? No, not in this particular case. But with that said, there's an argument in that case that the Tort Immunity Act actually may not be a valid argument. And, in fact, the non-settling defendants make that argument in that case. They say, hey, we still have this argument that they're... Will Fulham-Watton would have something to get around it. I'm sorry, I didn't... Will Fulham-Watton. Yeah, I mean... Before they got around tort immunity. Essentially. But they definitely and widely built the runways a certain way. Correct. The argument existed, essentially. But with that said, in that particular case, we're talking about eight lives lost and the city of Quincy got out for $8,000. We're talking, I think, just as large, if not larger, of a verdict than is possible in a case like this. Probably much larger. For eight lost lives. The city of Quincy, the allegations against them as a third-party defendant were that they didn't properly design or maintain the runways and that's why this accident happened. They had two crossing runways. They got out for $8,000 because they said, you know what? The plaintiff decided that it wasn't worth it. That it wasn't worth it to pursue this particular defendant. Yes, partially because of their defense in this case, but they felt they had better arguments elsewhere against other defendants and decided to pursue those. And the court gave credence to that particular argument. And I think that's relevant here as well. The plaintiff is the one who has the potential to be really, I think, very heavily prejudiced in their opportunity to settle this case and perhaps victimize for a second time here because they have to come back to the table and they have to incur litigation costs and incur risk. All of this to chase an unassailable defendant. Let me ask the question I asked Mr. Christensen. Is there anything in the record that tells us what the special damages are? Not specifically is the answer to that question. And I believe part of that is because... And if that, then how could Judge Gamowinski could have applied the appropriate rules to determine whether this was a good faith settlement? Given that, I mean, and counsel even testified to the fact that, or at least testified, argued to the fact just moments ago, that there was evidence that this is 11 days in a hospital, brain hemorrhage, brain injury. You know, you look at a case like that, and I think it's easy to say that's going to be, you know, above and beyond the amount in question, the $20,000 at least. And then it goes to that question of the probability of recovery, that question of is it worth it for the plaintiff to pursue someone who's unassailable under the circumstances? They're acting in good faith. And, you know, it was our burden to come forward with this and put the settlement on the table, put the release on the table, and say here's why. She's got $20,000. That's her only asset. And they've got a defendant that they don't have and can't get anything out of essentially in the end. That is a legally valid settlement. There's nothing collusive about it. What about your opponent's point, and I think that the release kind of struck me as being very thorough, just as your opponent pointed out. What about the fact that your release, the release document has indemnification language for Ms. Geeds, and it's an unusual inclusion to say the least. Your opponent believes that that made it clear, or at least certainly allows a strong inference that you weren't so sure that this was a good faith settlement and weren't sure that you were going to be able to get that. I can say from my experience that most of the policies such as this with $20,000, most every release that I've ever seen has that indemnification language in it. It's a standard. Now I understand that doesn't necessarily address your question in this particular matter. And I would say that for all intents and purposes, this is a release of my client from the case, and in order to properly protect my client, that's part of that. So they can't come back later and say, well, we're going to. Of course, it's good lawyering on your part, but I think what he was suggesting is it also has another suggestion, which is that maybe there isn't good faith in this case. Well, let me switch and ask you another question that I asked him. Do you think it's fair to say that in the absence of fraud or collusion that's obvious in the case that the trial court will simply rubber stamp a settlement as being made in good faith, especially when the entire policy is offered? I don't think so. I think that, and I can speak to this case in particular, I think that there is an analysis here that goes on. There's an analysis of, you know, is it good? And the one thing we haven't addressed is this other policy that underlies the Contribution Act, and that is the policy to encourage settlement. And in this case, should they have found a bad faith finding, it would have been a major discouragement to the idea of settlement to both insurance companies who have a good faith obligation to their clients to put money on the table when these situations arise to protect their interests and to plaintiffs as well who, you know, well, why would we settle with you for your policy when in the end it doesn't really matter anyways. We can take you as far as we can go and then maybe try to get a little bit more out of you on the back end. It would have discouraged settlement for there to be a bad faith finding in this particular matter. And I want to draw attention to what I think is actually happening here, which is I think that the question that's really on the table is this question that comes up in the Reedy v. United case, is whether or not the non-settling defendant who's standing there afterwards and has to proceed to trial has somebody else to point to on the verdict form at the end of the case. And that question, I didn't hear counsel address that before, but I think that question is really what's happening here. That's the elephant in the room. I think everybody knows that. And that's why I want to point to some language in the Reedy case because these questions, really I think what's being asked here is there's no evidence. We know there's no evidence. Appellant's counsel has noted that there's no evidence of collusion or fraud or wrongful conduct. So when we look at this particular thing, what they're saying is it's unfair to leave us at the end, even though she's put forward her entire policy, with nobody else on the verdict form. And in Reedy, the Supreme Court acknowledges that point and says that's a point for the legislature. That's not a point for us in this particular case. We leave that to the legislature. And, in fact, the settling defendant in that particular matter argued what I'm arguing here today, which is that it would discourage settlements on the other side. And they said, you know what, we're not going to weigh those. We think that that's something the legislature took into consideration when they passed this particular statute, and for that reason we're going to leave it as it is and non-settling defendants don't appear on a jury verdict form. And that's really what's happening here. It's a backdoor argument to try to get around that particular issue, to try to get somebody to blame at the end of the case, even though there's a good-faith settlement here. There's a settlement. The probability of recovery was taken into consideration in light of the circumstances, like I said. Do we not merely take into consideration the probability of recovery from this judgment-proof defendant, but do we not also take into consideration the special damages and the likely damage award that a jury would render against Ms. Gaines had she not jumped out of the case with the settlement? Are we supposed to consider that as well? Again, this being an abuse of discretion case, the court doesn't have to have an evidentiary hearing on all those things. They just have to look at the facts that are in front of them, and they don't even have to know what the total amount of damage is. How can you tell if the judge abused his discretion without knowing what the specials are? Because in this particular case, he looked at what was there, at what money was there versus what liability they would have, and said, okay, but even if she's 100 percent liable, this probability of recovery question is still there. The language in Johnson is still there, and if that language is still there, essentially they can't get another dollar out of this person. Why would I go back and say, you know, it's bad faith for you to have a settlement that, yes, benefits you, yes, benefits the defendant. You have a $20,000 for this defendant as a drop in the bucket. I mean, $20,000 was the first five hours in the ICU, right? For the plaintiff, yes. I wouldn't doubt it in this particular case. I obviously can't concede that fact without having the damages in front of me myself, but at the same time, given the injuries in question, yeah, this is a big time, a lot of specials in this case, I would say. But with that said, the settling defendant only has what the settling defendant has under the circumstances, and there's no reason the plaintiff needs to get dragged through litigation with another defendant the entire time, the entire process, incur those costs, incur those risks. That argument suggests that if what you're saying, I assume, that if a defendant only has a small policy and there's no evidence of collusion, by definition you've got to find good faith and the defendant gets to go home. I mean, that's what you're saying, and I don't think that's the law. I think what I'm saying the law is in a case where there's no other assailable assets and they've put up everything they've got, there's no reason to continue to drag a settling defendant through litigation. There's no reason for a plaintiff to have to not take a settlement, and essentially that's what I think a bad faith finding actually stands for in this case, is that the plaintiff cannot make that settlement demand, cannot accept that settlement offer of $20,000 because it's not in good faith. Can you speak briefly to your opponent's, and I want to wrap this up, but your opponent's contention that they were prevented from doing some discovery, minimal or otherwise, to test that question as to how the settlement came about. Were they entitled to do that kind of discovery? They were entitled to do the discovery that they received in this particular case, which was the deposition of my client and the discovery, and the written discovery. That's a good non-answer. Were they entitled to additional discovery? My answer is no. And actually, if you look at the Johnson case, Johnson, they asked for the same thing. They asked for additional discovery, and the court said no, and the Supreme Court comes back and said, that's a discretionary matter. If the court thinks they've got what they need to review this matter, then the court can determine that they don't get any additional discovery. And this court, and Judge Gomolinsky in this particular matter, felt he had what he needed to be able to evaluate this case, given the factors that are outlined in Johnson and elsewhere. Okay. Anything else? Thank you very much. Thank you, Mr. Traynor. Mr. Christensen, brief rebuttal, please. Thank you, Your Honor. My opponent seeks to change the relative culpability of the parties to the relative wealth of the parties. He seeks to change the second prong of the public policy under the Contribution Act to a citation to discover assets. It's not in any of the case law, and it's not in the statute. In fact, public policy and relative culpability of the parties is the purpose of the Contribution Act in the first place, which is no one defendant should be responsible for more than their pro rata share of the damages. And that is extended under the Joint Several Liability Act to 75%, but not to 100%, which would be the case here. With respect to chilling the other public policy under the Contribution Act of discouraging settlements, in the facts of this case, that's not true. This settlement is done, booked, approved by the probate court, and pocketed. And there was an identification agreement to cover any contingencies if there was not a good faith finding. So the public policy of enforcing and upholding settlements in this case will be maintained with a reversal of the good faith finding. Worsing was reversed because the forklift truck driver could not get out for $1,000. Bowers was reversed because the construction defendants could not get out for $10,000. In both of those cases, they had defenses. In this case, Keisha Gaines doesn't have any defense. She is liable. She pled guilty to felony for this accident, and Wall should not have to bear her pro rata share of liability as it goes forward in this case. Thank you very much. Thank you, Mr. Christensen. Thank you, Mr. Treasurer. Thank both of you for good arguments. This case will be taken under advisement, and the court stands adjourned. Thank you.